22h 91
84 AD'363

THE PEOPLE OF THE STATE OF NEW YORK *ex rel.* THE CHROME STEEL COMPANY, *v.* JAMES N. PAULDING, INDIVIDUALLY AND AS TRUSTEE, &C., AND OTHERS, RESPONDENTS.

*Summary proceedings—the holding over of a tenant after the expiration of his term treated as an enlargement of it.*

The respondent demised certain premises to the relator, for the term of five years, from November 15, 1870, by a written lease, and thereafter extended the said term to November 15, 1877. After the latter date the relator continued to use and occupy the premises as before, until summary proceedings to remove it for the non-payment of rent were instituted, no rent having been paid since 1876.
*Held,* that the entire period during which the relator held over was to be treated

as an enlargement of the original term, and that the proceedings were properly instituted for the non-payment of the whole rent unpaid.

That the tenancy from year to year did not cease at the end of each year, so that a new term for the succeeding year began thereafter.

That the payment of all the rent falling due subsequent to the 15th of November next preceding the commencement of the summary proceedings, rent due prior to that time being still unpaid, was not sufficient to stay the proceedings.

CERTIORARI to review summary proceedings instituted, before a justice of the peace in the city of Brooklyn, for the removal of the relator from certain premises occupied by it.

The tenant, the Chrome Steel Company, entered into the possession of the premises, from which they are sought by this proceeding to be summarily ejected for the non-payment of the rent, under a lease for the term of five years, commencing on November 15, 1870, the rent being payable quarterly on the first days of February, May, August and November in each year. The term of this lease was extended by an agreement indorsed thereon for one year, and again by another agreement also indorsed thereon for a second year, the term finally expiring on November 15, 1877. After the expiration of the lease on that day the tenant continued in the possession and occupation of the premises up to the time of the commencement of these proceedings. Rent for a part of the year 1876, and for the whole period since that time, except for the time between November 15, 1879, and February 1, 1880, which was paid after these proceedings were instituted, remained unpaid, and each installment thereof was duly demanded.

The tenant contended that each year since the expiration of the term of the lease constituted a distinct and independent tenancy, and especially that each year of the holding over constituted a distinct tenancy, each tenancy ending on November 15, in each of said years, and that these proceedings could be brought only for the non-payment of the rent which had become due since November 15, 1879, that is, for the current year's tenancy, and such having been paid, that no warrant could issue.

The landlords, on the other hand, claimed that a tenancy from year to year is a continuing one, and does not cease at the end of any year of the tenancy unless a notice to quit has been served, which

has never been done in this case, and that therefore there had been a continuing tenancy, at least since November 15, 1877, and that these proceedings could be founded on the non-payment of any rent which has become due since November 15, 1877, when the tenancy from year to year commenced.

The justice held with the landlords, and under a stipulation the issue of the warrant was stayed, pending the decision by this court of the questions involved.

*Winchester Britton*, for the relator.

*S. D. Morris*, for the respondents.

DYKMAN, J.:

This is a proceeding by a landlord under the statute to remove a tenant for the non-payment of rent. The tenant entered first into the possession of the premises under a written lease, for the term of five years, commencing on November 15, 1870, and providing for quarterly payment of rent. Occupation was had under this lease until its termination, and then the term was extended for two years by a written indorsement. These two years expired on November 15, 1877, but the tenant continued to possess and occupy the premises from that time to the present. When these proceedings were instituted the rent for part of the year 1876, and the whole period since, remained unpaid, and the defense interposed is that these proceedings can be maintained only for the rent accruing since November 15, 1879, the current year's tenancy, for the reason that each year since the expiration of the lease has constituted a distinct and independent tenancy.

We cannot yield assent to this proposition. With the assent of the landlord the tenant continued to occupy the premises after the expiration of the written lease, and a reasonable inference is that both parties intended a tenancy thereafter, on the terms therein provided. The possession of the tenant was rightful, but it was under the original demise. He held over after the expiration of the term, and thus became a tenant from year to year. Such tenancy might have been terminated by a notice by either party, but until such notice was given it was continuous. Both parties had

the election to continue the tenancy or terminate the same by notice. (*Conway* v. *Starkweather*, 1 Denio, 113 ; *Schuyler* v. *Smith*, 51 N. Y., 309 ; *Laughran* v. *Smith*, 75 Id., 205).

When distress for rent was a remedy in the hands of the landlord in this State, it was held, where a tenant entered under a demise for two years and continued in possession nine years, the landlord might by one distress distrain for the rent accruing during the whole time. (*Sherwood* v. *Phillips*, 13 Wend., 479.) In that case the great question was whether the landlord could distrain for the whole nine years as one term, and it was held he could. After an examination of some of the cases, Chief Justice SAVAGE says : "Applying these principles to the pleadings in this case it follows that the occupancy in this case is to be considered as resting upon a valid lease for nine years. The right of the landlord to distrain is just as perfect as if there had been in the first instance a written lease for nine years." The same doctrine was held in *Webber* v. *Shearman* (3 Hill, 547), and Judge COWEN there said, "Holding over after the expiration of a sealed lease is a continuation of the same tenancy and an enlargment of the same term." This rule comports with both reason and justice, and nothing in this case calls for the adoption of another. After the expiration of the written lease the tenant remained silent but continued his possession, and the landlord acquiesced in the continuance. Plainly, both parties understood the after occupation to be on the terms specified in the lease. The appropriate mode of terminating this tenancy was by notice, and neither party gave it, and the tenancy yet continues.

Our conclusion is that these proceedings were properly instituted, for the non-payment of the whole rent, and the judgment must be affirmed, with costs.

BARNARD, P. J., and GILBERT, J., concurred.

Judgment affirmed, with costs.