CHARLES L. PICKETT, Appellant, *v.* EDWARD B. BARTLETT et al., Respondents.

Plaintiff's assignor leased to defendants a bonded warehouse and other premises for a term of one year from November 1, 1880, the lessees covenanting to surrender at the end of the term, to pay the rent for the term and "for such further time" as they may hold the premises. Bonded goods belonging to defendants and placed in the warehouse before the expiration of the term, were left there until December 23, 1881, in consequence of defendants' inability to remove them without the consent of the government officials. On that day the government locks were removed, the goods taken away and the keys of the buildings were left at a place designated by plaintiff. Plaintiff claiming that by the holding over he had the right to elect to hold the lessees for another year upon the terms of the lease, brought this action to recover the rent. *Held*, that, it appearing by the lease, the parties anticipated a holding over by the tenants and expressly provided for it, the holding over was not wrongful or such as enabled the landlord at his option to treat the tenants as wrongdoers or hold them for the rent of the second year, and that they were only liable up to the time of the surrender of the premises

*Schuyler* v. *Smith* (51 N. Y. 309) distinguished.

(Argued October 6, 1887; decided November 29, 1887.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made May 7, 1885, which affirmed a judgment in favor of defendants entered upon a verdict. (Reported below, 13 Daly, 229.)

The nature of the action and the material facts are stated in the opinion.

*Charles H. Knox* for appellant. The term of a lease is fixed by the *habendum* clause, and cannot be increased by a covenant on the part of defendants alone. (McAdam on Landl. and

Ten. 55, § 37; id. 187, § 103; *Burchell* v. *Clark*, 2 C. D. P. 88; *Blair* v. *Osborne*, 84 N. C. 419; 2 Platt on Leases, 47; 3 Washb. on R. P. [3d ed.), 372, 375, 436; *W. Trans. Co.* v. *Lansing*, 49 N. Y. 503, 509; *Abeel* v. *Radcliff*, 13 Johns. 296; *Pugsley* v. *Aiken*, 1 Kern. 494; *Lounsbery* v. *Snyder*, 31 N. Y. 514; *Drake* v. *Seaman*, 96 id. 230; *Wright* v. *Weeks*, 25 id. 153; *Peabody* v. *Speyer*, 56 id. 230; *Blossom* v. *Griffin*, 3 Kern. 569; *Stone* v. *Browning*, 68 N. Y. 598; *Buck-master* v. *Thompson*, 36 id. 558.) It is the duty of a tenant as soon as his tenancy expires by its own limitation, to surrender the possession of the whole of the demised premises, together with all the buildings belonging thereto, to his landlord, or to some one authorized by him to receive them. If he neglects or refuses so to do, even though he retains them but for a few days, with the intention of removing, the land-lord may treat him as a tenant for another year at the same rent, and payable at the same times in the year, and in the same way as the lease provided for the previous year. (*Schuyler* v. *Smith*, 51 N. Y. 309 *Laughran* v. *Smith*, 75 id. 205; *Witt* v. *Mayor, etc.*, 6 Robt. 441; McAdam's Landl. and Ten. [2d ed.], 32; 4 Wait's Act. and Def. 218; *Austin* v. *Strong*, 47 N. Y. 679; *Reeder* v. *Sayre*, 70 id. 180; Girard's. Tit. to R. E. 198.) Permission to remain longer would be a new agreement, and must be pleaded and set up as an affirm-ative defense. (*McKyring* v. *Bull*, 16 N. Y. 297; *Henegger* v. *Wettstein*, 94 id. 252.) On the 1st of November, 1881, as the defendants had their goods on the premises which were then bonded to the government, and it would have been a criminal offense under the United States law to interfere with them, punishable by imprisonment, by operation of law on the undisputed facts the landlord was entitled to hold the tenant for a year under the terms of the lease. (U. S. R. S., § 2998; *Schuyler* v. *Smith*, 51 N. Y. 309; *Scott* v. *Stebbins*, 91 id. 615.) A surrender of the keys was neces-sary for the purpose of yielding up possession of the premises. (*Gibbons* v. *Dayton*, 4 Hun, 451; *Little* v. *Martin*, 3 Wend. 219; McAdam's Landl. and Ten. [2d ed.], 65.)

*W. W. Goodrich* for respondents. Promises in law exist only in the absence of express promises. (1 Chitty on Cont. [11th Am. ed.], 89.) The rule of construction is to discover and give effect to the intention of the parties; so that performance may be enforced according to the sense in which they mutually understood it at the time it was made. (1 Chitty on Cont. [11th Am. ed.], 104, 105.) Even if the provision for holding over had not been inserted in the contract, the tenant would have had the right to explain that his holding over was not voluntary, but compulsory. (*Smith* v. *Alt*, 7 Daly, 492; *Tuomay* v. *Dunn*, 42 N. Y. Super. Ct. R. 291; 1 Greenl. on Ev., § 33.) Every demise between landlord and tenant in respect of matters as to which the parties are even silent, may be fairly open to explanation by the general usage and custom of the country or the district where the land lies. (Broom's Legal Max. [7th ed.], 663.) Effect must be given to every part of the contract. (*Ward* v. *Whitney*, 8 N. Y. 446; *Hamilton* v. *Taylor*, 18 id. 361; *Wood* v. *Sheehan*, 68 id. 368; *Holmes* v. *Hubbard*, 60 id. 185; *W. N. Y. L. I. Co.* v. *Clinton*, 66 id. 331.) The doctrine of *Schuyler* v. *Smith* (51 N. Y. 309) does not apply to this case as the holding over was not wrongful. (*Smith* v. *Alt*, 7 Daly, 492; *Tuomay* v. *Dunn*, 42 N. Y. Super. Ct. R. 293.)

DANFORTH, J. On the 1st day of November, 1880, the plaintiff's assignor demised to the defendants certain premises, and among others a bonded warehouse known as the Baltic stores. The lease was executed by both parties and after a description of the property contained these words: "To have and to hold the above described premises for the term of one year from the 1st day of November, A. D. 1880, yielding and paying therefor the rent of sixty-five hundred ($6,500) dollars per year. And the said party of the second part hereby agrees and promises to pay the said rent in equal quarterly payments, and to quit and deliver up the premises to the party of the first part, or its attorney, peaceably and quietly at the end of said term in as good order and condition, reasonable

use and wearing thereof excepted, as the same now are, or may be put into by the party of the first part, and to pay the rent for said term, and/also for such further time as the party of the second part may hold the same, and not make or suffer any waste thereof."

The plaintiff alleged by his complaint that the year for which the premises were demised to the defendants ended on the 1st day of November, 1881, but notwithstanding that "the defendants continued in occupation and possession, and did not surrender nor offer to surrender possession thereof, but held over," and the lessors elected to hold them as tenants for another year. After its expiration and in February, 1884, this action was brought to recover rent alleged to be due for the last three-quarters of the second year. At the trial it appeared that bonded goods belonging to the defendants' customers and placed by them in the stores before November 1, 1881, were left there until December 23, 1881, in consequence of defendants' inability to remove them without the consent of the government officials. On that day the government locks were removed the defendants' bond as warehousemen canceled, padlocks put on the doors and the keys left at the office of the American Tack Company, where, in a certain contingency, the plaintiff had directed they should be left. There was evidence by parol and otherwise tending to show a surrender of the premises at the expiration of the term, and that question was litigated. At the close of the evidence each party requested the court to direct a verdict in his favor, but the learned trial judge submitted the case to the jury as one in which a verdict either way might in one or another view of the evidence be warranted, saying, "all that you have to decide is whether the defendants surrendered those premises at the time stated. If they did this suit, being to recover rent after that time, cannot be maintained." The jury found for the defendants. The Special Term denied a new trial, and after judgment of affirmance by the General Term, the plaintiff, appeals to this court.

The learned counsel for the appellant contends that the

case turns on the proper construction of that portion of the lease above quoted, his claim being that " the legal effect of the holding over was, at the election of the lessor, to make the lessees liable for another year's rent, payable at the same times in the year and in the same way as the lease provided for the previous year," thus invoking the benefit of the rule which, in favor of the landlord, implies an agreement as by tacit consent, that the tenant who holds over after the expiration of his term, shall be deemed to hold for a year upon the terms of the prior lease. His principal argument is that the covenant of the lessee to pay for " such further time," after the expiration of the year, as he shall hold the premises, must, so far as it implies a limitation, be disregarded and give place to the legal implication already referred to. But the agreement is to be construed by the intention of the parties at the time of making it, as that intention may be gathered from its subject matter and the terms in which it is expressed. The lease related to a bonded warehouse which by the provisions of law must, while occupied in that character, be used solely for the purpose of storing warehoused merchandize, and be placed in charge of an officer of the customs, who, together with its owner and proprietor, should have the joint custody of all the merchandize stored therein (U. S. Rev. St. § 2960.) Its use was subject to governmental regulation, and it was as to receipt, storage and delivery of merchandize from it, altogether removed from the control of the lessee. It may well be that these considerations furnished a reason for the clause which purports to limit the lessees' liability for rent to such time beyond the year as they should actually hold the premises. The plaintiff relies upon an implied promise, but the lease contains an express covenant and to it the implied promise must yield. The lease does not continue in force beyond the term of one year specified in and created by it, and the holding over must be deemed to have been on the defendants' covenant solely. For the term of one year they agree to pay the specified rent, and also to pay the rent for such further time as they may hold the premises. Thus the parties anticipated a holding by the

tenants beyond the term and expressly provided for it by agreement. It, therefore, was not wrongful, nor such a holding over as makes the tenant a wrong-doer and enables the landlord, at his option, to treat him as a trespasser or hold him for the rent of a second year.

In *Schuyler* v. *Smith* (51 N. Y. 309), cited by the appellant, there was no agreement in reference to a holding after the expiration of the term, and the principle upon which that case turned, has no application here. Nor do the other cases cited by the appellant require any different conclusion. *Western Transportation Company* v. *Lansing* (49 N. Y. 499) was an action for specific performance, by the landlord, of a covenant not unlike the present, and which the lessee claimed entitled him to renewal of the lease for a term like that originally granted. But the court held he was not entitled to it, and the whole reasoning of the judge in that case aids the defendants here, for it shows that the implications upon which the plaintiff relies cannot be indulged in.

Other propositions are argued by the appellant and have been examined. We do not find that they point to any error in the judgment of the court below. It should, therefore be affirmed.

All concur, except RUGER, Ch. J., not voting.

Judgment affirmed.