WILLIAMS, J.
—The action was brought to recover rent under a lease. March 9, 1894, the parties entered into an ■agreement in writing whereby the plaintiff leased the defendant a dwelling-house for the term of one year, from May 1, 1894, to May 1, 1895. The defendant occupied the dAvelíing-house during the year for Avhich the lease Avas given. At the expiration of the year the defendant’s mother, Avho Avas a member of his family, was sick with a disease, which at and prior to the expiration of the year, and for some íavo weeks thereafter, confined her to her bed, and it would have aggravated her disease and endangered her life to have moved her from the house; and for that reason the defendant was compelled to and did continue, after the expiration of the term of the lease (two weeks), to occupy the leased property. The defendant had, several months before the expiration of the lease, notified the plaintiff that he would surrender up the property leased at the end of the year. The plaintiff did not consent to the occupation of the property after the expiration of the term of one year. There was apparently an attempt made by the defendant, at the end of the two Aveeks Avhich he had occupied the property after the expiration of the year, to surrender the property to plaintiff. He vacated the premises and refused to pay rent. The plaintiff refused to accept the premises; claimed that the defendant, by holding over after the expiration of the one year, had taken the property for another year, under the terms of the same lease; and brought this action later for rent for a portion of the second year. When the defendant held over and remained in the occupancy of the 2>roperty, beyond the expiration of the year, - without the consent of the plaintiff, the plaintiff might have refused to permit the defendant to hold the property under the lease for another year, and might lmm taken legal proceedings and remoAmd him, and might have claimed and recovered double *1099 the rent provided in the lease, for the time the defendant remained in the occupancy beyond the year. 2 Rev. St. (Banks’ 9th ed.) p. 1819, §§ 10, 11. He had the right, however, to regard the holding over as creating a new lease for another year. The law is well settled upon this question. The right of the landlord to so regard the effect of the holding over is absolute, and no notice by the tenant of his intention not to retain the premises for another year, whether given before or ■after the expiration of the year, can affect the right of the. landlord to insist upon the legal operation of the holding over by the tenant without consent,—the creating of a new lease for another year upon the same terms. Commissioners v. Clark, 33 N. Y. 257; Schuyler v. Smith, 51 N. Y. 309 ; Adams v. City of Cohoes, 127 N. Y. 182; 38 S. R. 678; Haynes v. Aldrich, 133 N. Y. 287 ; 45 S. R. 243.
The only question raised upon this appeal is whether this rule of law would be varied in a case like the present one, where the holding over by the tenant was not voluntary,— not for his own convenience,—but was by reason, practically, of a necessity,—because he could not help it. The fact of the sickness of defendant’s mother, and that she could not be moved out of the house without aggravating her disease and endangering her life, was conceded on the trial. The question is therefore squarely raised in this case, and must be met. This question was not necessarily involved in Haynes V. Aldrich, supra, because in that case the sickness was not of a member of defendant’s family, but of the family of a subtenant, to whom the defendant had no right, under the lease, to let the premises. The defendant there was compelled to hold over, if at all, by reason of his wrong, and not of necessity, or because he could not have avoided it. As said by the court:
“The tenant remained in possession voluntarily,—for her own convenience and that of her sick boarder. If it was unsafe to remove the latter, the situation was wholly the fault of the tenant, who sets up as an excuse for one violation of the lessor’s rights the consequence of her own earlier violation of the terms of the lease.”
The court in that case expressly reserved the question whether there might not be an unavoidable delay, in no manner the fault of the tenant, directly or indirectly, which would serve as a valid excuse for holding over, and would avoid the absolute operation of the statute. While, therefore, this question was discussed in the opinion in that case, it was not decided. We are of the opinion that no such qualification should be, or could safely be, imported into the absolute rule of the law. It would make the landlord, rather than the tenant, suffer by reason of a misfortune to the tenant, which he, and not the landlord, should bear the burden of. And as said by Judge Finch in Haynes v. Aldrich, supra:
“ It would introduce an uncertainty into a rule "whose chief *1100 value lies iu its certainty. The consequent confusion would be very great. Excuses would always be forthcoming, and their sufficiency be subject to the doubtful conclusions of a jury, and no lessor would ever know when he could safely promise possession to a new tenant.”
Our conclusion is therefore that the exceptions taken by the-defendant should be overruled, his motion for a new trial denied, and judgment ordered for plaintiff on the verdict, with costs.
All concur.